FILED
U.S. DISTRICT COURT
2012 APR 23 AM 11: 10
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

CHAD HEAD, )
 )
        Plaintiff, )
 )
v. )   CIVIL ACTION NO.: CV211-136
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
 )
        Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge John H. Maclean ("the ALJ") denying his claim for period of disability and disability insurance benefits. Plaintiff urges the Court to reverse and remand the ALJ's decision for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff filed an application for a period of disability and disability insurance benefits on April 17, 2009, alleging that he became disabled on August 1, 2008, due to back injury, neck injury, knee problems, migraine headaches, several degenerative disks in back and neck, dislocated discs in lower back, and arthritis in back, neck, and knees. (Tr. at 148, 175). After his claim was denied initially and upon reconsideration, Plaintiff filed a request for a hearing. (Tr. at 16). On October 28, 2010, the ALJ conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified. (Tr. at 541–42). James Waddington, an impartial vocational

AO 72A
(Rev. 8/82)

expert, was also at the hearing. (Id.). On January 10, 2011, the ALJ conducted a second hearing at which Plaintiff, who was represented by counsel, appeared. (Tr. at 29–30). Dennis Conroy, an impartial vocational expert, and Arthur Lorber, an impartial medical expert, were also at the hearing. (Id.). The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 23). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 1–4).

Plaintiff, born on March 7, 1970, was forty-one (41) years old when the ALJ issued his final decision. He has a twelfth-grade education. (Tr. at 182). Plaintiff has past relevant work experience as a fitter and welder. (Tr. at 176).

## ALJ'S FINDINGS

Pursuant to the Social Security Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R.

2

§§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset of disability, August 1, 2008, through his date last insured, December 31, 2010.[1] (Tr. at 18). At step two, the ALJ determined that, through the date last insured, Plaintiff had the following conditions considered "severe" under the Regulations: back injury, neck injury, knee problems, migraine headaches, and arthritis with several degenerative discs in the back and neck. (Id.). However, at step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. (Id.). The ALJ found that, through the date last insured, Plaintiff had the residual functional capacity to perform work at the light exertional level, with the following limitations: a sit/stand option at will; no more than occasional stooping, crawling, crouching, or kneeling; no overhead reaching; no climbing ladders, ropes, or scaffolds; no work

---

[1] Plaintiff's date last insured is actually September 30, 2011. (Tr. at 152, 154). However, the discrepancy is not material because all evidence dates from before December 31, 2010.

3

around moving machinery or unprotected heights; and no work at a position that requires acute hearing or verbal instructions throughout the day. (Tr. at 19). At the fourth step, the ALJ determined that Plaintiff's impairments precluded him from performing his past relevant work as a welder. (Tr. at 21). However, at the fifth and final step, the ALJ determined that, through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that he can perform. (Tr. at 22). Specifically, the ALJ found that Plaintiff would be able to perform work as a hand packager, table worker, bench hand, gate guard/night watch person, and cashier parking lot ticket taker. (Tr. at 25).

## ISSUE PRESENTED

Plaintiff asserts that the ALJ made the following errors: (1) the ALJ did not evaluate Dr. Brooks' walking and lying-down requirements and did not pose those requirements to the vocational experts; (2) the ALJ omitted other of Plaintiff's limitations when posing hypothetical questions to the vocational experts; (3) the ALJ did not discuss objective test results and narrative comments by Dr. Shenkman and Dr. Shenkman's assistant, respectively.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh

4

the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

**I. Plaintiff's assertion that the ALJ did not evaluate Dr. Brooks' walking and lying-down requirements and did not pose those requirements to the vocational experts**

Plaintiff asserts that the ALJ erroneously did not evaluate some "requirements" imposed by Plaintiff's treating orthopedist, Dr. Brooks. Dr. Books determined that Plaintiff needs to walk around for about five (5) minutes every thirty (30) minutes. (Tr. at 531). Additionally, Dr. Brooks determined that Plaintiff will, once or twice per week, need to lie down at unpredictable intervals during a work shift. (Id.). Plaintiff asserts that the ALJ's decision omits discussion of Plaintiff's need to walk around. Plaintiff also

AO 72A
(Rev. 8/82)

asserts that the ALJ's questions to the vocational experts omit Plaintiff's need to walk around and his need to lie down.

Defendant contends that the ALJ's decision "reflects that the ALJ implicitly discounted the unsupported aspects of Dr. Brooks' opinion (Tr. 19-21)." (Doc. No. 12, p. 6). Defendant avers that Dr. Brooks' assessment of Plaintiff's need to walk around and lie down were implicitly discounted because "Dr. Brooks' [sic] failed to provide objective medical evidence to support his opinion that Plaintiff needed to be able to walk around and lie down at unpredictable intervals . . . (Tr. 530-32)." (Id.). Additionally, Defendant argues that Dr. Brooks' opinions regarding Plaintiff's needs to walk and lie down are inconsistent with the record as a whole. (Doc. No. 12, p. 8). Defendant concludes that "[b]ecause the record did not support Dr. Brooks' opinion that Plaintiff needed to walk around and lie down, the ALJ did not need to include either limitation in his [residual functional capacity] finding or in a hypothetical question to a [vocational expert]." (Doc. No. 12, p. 9).

Defendant cites Crawford v. Commissioner of Social Security, 363 F.3d 1155 (11th Cir. 2004), for the proposition that implicit rejection of a medical opinion is allowed. However, in Crawford, the ALJ implicitly rejected the opinion of a consultative psychologist, who was not one of Crawford's treating physicians. Consequently, Crawford is not instructive.

The opinion of a "treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted). "Good cause" exists where the doctor's opinion "was not bolstered by the evidence, or where the evidence supported a contrary

6

finding[, . . . or] where the doctors' opinions were conclusory or inconsistent with their own medical records." Id. (citations omitted). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Id. (citation omitted). See also Watkins v. Commissioner of Social Security, 2012 WL 399995 *3 (11th Cir. 2012) (finding that the administrative law judge's omission of a treating physician's sit/stand limitation from the claimant's residual functional capacity "[w]ithout a clear explanation" precluded the court from "determin[ing] whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence").

With regard to Dr. Brooks' opinions, the ALJ stated, "[t]he undersigned has also considered the opinion of the [sic] Dr. Brooks and contained in Exhibit 18F. The undersigned has agreed with *some* of the limitations in his opinion and has adopted them in his residual functional capacity[.]" (Tr. at 21) (emphasis added). The ALJ did not state why he agreed with only some of Dr. Brooks' opinions or why he adopted only some of them into his determination of Plaintiff's residual functional capacity. As a result, the Court is unable to discern whether the ALJ disregarded, for good cause, the opinions with which he did not agree, and, in turn, whether his decision in this regard is supported by substantial evidence.

Plaintiff's assertion that the ALJ's questions to the vocational experts omit Dr. Brooks' opinions that Plaintiff needs to walk around and lie down are addressed in the next section of this Report.

## II. Plaintiff's assertion that the ALJ omitted Dr. Brooks' opinions that Plaintiff needs to walk around and lie down and other of Plaintiff's limitations when posing hypothetical questions to the vocational experts

Plaintiff asserts that the ALJ erroneously omitted some of his limitations from hypothetical questions to the vocational experts. First, Plaintiff correctly states that the ALJ did not include Dr. Brooks' opinions that Plaintiff needs to walk around every thirty (30) minutes and needs to lie down at unpredictable intervals once or twice per week. (Tr. at 43–48, 545–46, 558–62).

In Watkins, the Court of Appeals for the Eleventh Circuit primarily based its decision to remand the administrative law judge's decision on that judge's failure to clearly articulate the reasons for giving less weight to the claimant's treating physician. However, the court pointed out that the administrative law judge did not include the treating physician's limitation in the hypothetical questions posed to the vocational expert. Watkins, 2012 WL 399995 *2. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Lee v. Commissioner of Social Security, 448 F. App'x 952, 953 (11th Cir. 2011) (quoting Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)). "The ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported, however." Id. (citing Crawford, 363 F.3d at 1161).

The ALJ did not include as limitations of Plaintiff's residual functional capacity Dr. Brooks' opinions that Plaintiff needs to walk around every thirty (30) minutes and needs to lie down at unpredictable intervals once or twice per week. (Tr. at 19). The

implication is that these findings by Dr. Brooks are among the limitations with which the ALJ did not agree. (See Tr. at 21). As a result, the ALJ was not required to include these limitations in his hypothetical questions to the vocational experts.

Plaintiff also correctly asserts that the ALJ did not include some of Plaintiff's other limitations when posing questions to the vocational experts. As to the first vocational expert, Plaintiff correctly states that the question specified changing positions every hour, not at will. (Tr. at 560). However, in Williams v. Barnhart, 140 F. App'x 932, 936–37 (11th Cir. 2005), the Eleventh Circuit determined that a hypothetical that included a sit/stand option reasonably implied that the change of position would be at the claimant's own volition. Likewise, the ALJ's limitation of changing position every hour satisfies Plaintiff's need.

Plaintiff also correctly states that the question to the first vocational expert did not include the following limitations which were included in the ALJ's determination of Plaintiff's residual functional capacity: no more than occasional stooping, crawling, crouching, or kneeling; no overhead reaching; no working around moving machinery; and no working around unprotected heights. (Tr. at 19, 560). Additionally, the question to the second vocational expert did not include the following limitations which were included in the ALJ's determination of Plaintiff's residual functional capacity: no more than occasional kneeling; no overhead reaching; and no climbing ropes or scaffolds. (Tr. at 19, 44). Because the ALJ omitted some of Plaintiff's impairments in his hypothetical questions to the vocational experts, the answers to those questions do not constitute substantial evidence on which the ALJ can rely. See Lee, 448 F. App'x at

AO 72A
(Rev. 8/82)

953. The Court is unable to discern whether his decision at step five is supported by substantial evidence.

### III. Plaintiff's assertion that the ALJ did not discuss objective test results and narrative comments by Dr. Shenkman and Dr. Shenkman's assistant, respectively

Plaintiff asserts that the ALJ erroneously did not discuss results of an objective test performed by Plaintiff's treating neurologist, Dr. Shenkman. In March 2010, Dr. Shenkman performed an EMG-NCV-SSEP the results of which were "[c]onsistent with mild left L5 radiculopathy that may be seen with foraminal encroachment or sinuvertebral nerve root irritation at the L4-L5 level." (Tr. at 512). Plaintiff also asserts that the ALJ erroneously did not discuss narrative comments made by Dr. Shenkman's assistant in July 2010. (See Tr. at 496).

Contrary to Plaintiff's assertion, the ALJ stated, as part of his factual findings, that an "EMG dated in March 2010 was consistent with mild left L5 radiculopathy (Exhibit 17F)." (Tr. at 20). Additionally, the ALJ considered the neurological examination in July 2010 wherein "it was noted that most of [Plaintiff's] pain was mechanical[,]" (Tr. at 21), which is consistent with the July 2010 note that states "[p]robability is that the disc is creating the pain and not the sinuvertebral nerves around the facet capsules[,]" (Tr. at 496). The ALJ never indicated any disagreement with the findings of Dr. Shenkman or Dr. Shenkman's assistant; instead, he cited those records with approval. There is no indication that the ALJ did not give substantial or considerable weight to the findings of Dr. Shenkman and Dr. Shenkman's assistant.

AO 72A
(Rev. 8/82)

## CONCLUSION

Based on the ALJ's treatment of some of Dr. Brooks' opinions and the ALJ's omission of some of Plaintiff's limitations in his hypothetical questions to vocational experts, it is my **RECOMMENDATION** that the decision of the Commissioner be **REMANDED**, pursuant to Sentence four of 42 U.S.C. § 405(g).

**SO REPORTED** and **RECOMMENDED**, this 23rd day of April, 2012.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)